OPINION
Defendant-appellant Oscar Champion, Jr. appeals from his classification as a sexual predator. Champion contends that the sexual offender classification procedure provided for in R.C. 2950.01, et seq., violates Article I, Section I of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution. Champion further contends that the sexual offender classification procedure is arbitrary, and violates his right to due process. Finally, Champion contends that his classification as a sexual predator is contrary to the manifest weight of the evidence.
We conclude that the sexual offender classification statute is not unconstitutional under either the Ohio or United States constitutions. We further conclude, after reviewing the evidence in the record, that Champion's classification as a sexual predator is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
In late 1986, Champion was charged by indictment with three counts of Rape and one count of Kidnapping, all involving the same victim, on the same day. In early 1987, pursuant to a plea bargain, Champion pled guilty to one count of Attempted Rape, and all other charges were dismissed. Champion was sentenced to a term of from five to fifteen years imprisonment. His motion for shock probation was overruled.In 1992, Champion was released on parole. In 1994, Champion's parole was revoked. He was charged with assaulting his parole officer, and was sentenced to six months for this misdemeanor assault. In late 1994, Champion was returned to institutional custody, where he has remained ever since.
On October 14, 1999, Champion appeared, with counsel, for a sexual offender classification hearing. Five documents were received in evidence, the parties stipulating that the authors of the various documents would, if called to testify, give the testimony reflected in the documents. Champion requested, and was given, the opportunity to make an unsworn statement to the trial court.
Following the hearing, Champion was classified as a sexual predator, and was notified of his reporting and registration requirements as a sexual predator. From his classification as a sexual predator, Champion appeals.
 II
Champion's First Assignment of Error is as follows:
 THE SEXUAL PREDATOR CLASSIFICATION PROCESS VIOLATES ARTICLE I SECTION I OF THE OHIO CONSTITUTION AND THE14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.
In support of this assignment of error, Champion relies upon State v. Williams (January 29, 1999), Lake App. 97-L- 191, unreported. In view of the Ohio Supreme Court's reversal of this decision in State v. Williams (2000),88 Ohio St.3d 513, Champion concedes that his First Assignment of Error is no longer viable, and it is hereby overruled.
 III
Champion's Second Assignment of Error is as follows:
 THE SEXUAL PREDATOR CLASSIFICATION PROCESS IS ARBITRARY AND VIOLATES APPELLANT'S RIGHT TO DUE PROCESS.
In support of this assignment of error, Champion relies upon the following passage in State v. Copes (September 3, 1999), Montgomery App. No. 17483, unreported, at 3 (emphasis in original):
The matters involved in the R.C. 2950.02(B)(2) factors are, for the most part, facially neutral in relation to the finding of fact which that section requires the court to make. Requiring the court toconsider them, absent evidence relevant to those matters probative of the issue to be determined, creates a strong potential for an arbitrary result. Arbitrary determinations are inherently violative of due process.
Notwithstanding the above-quoted passage in Copes,supra, we nevertheless affirmed that defendant's classification as a sexual predator, based upon evidence in the record probative of a finding that defendant was likely to commit another sexual offense. We indicated that the House Bill 180 screening instrument used in that case was, by itself, insufficient to constitute clear and convincing evidence that the defendant was likely to commit another sexual offense. We indicated that consideration of the statutory factors, with which the House Bill 180 screening instrument is concerned, in a vacuum, without expert evidence linking the factors to the likelihood that the defendant would re-offend or without other evidence bearing upon the defendant's likelihood to reoffend, was insufficient to establish that likelihood by clear and convincing evidence.
Our thinking evolved further in State v. White (November 5, 1999), Miami App. 98-CA-37, in which we held that it was a violation of the separation of powers inherent in the Ohio Constitution for the General Assembly to prescribe certain factors that a trial judge, as a finder of fact, is required to consider in finding whether a sexual offender is likely to re-offend. In both of these cases, we were troubled by the arbitrariness of the factors, as prescribed, in the calculation of a sexual offender's likelihood of re-offending.
In the latter case, State v. White, supra, we concluded that a trial court is required, by the statute, to find whether a sexual offender is likely to commit another sexual offense. In making this predictive finding, the trial judge is exercising a core judicial duty and power — the adjudication of a disputed fact. We held that the trial judge is not required to consider the statutory factors, although these factors may be considered if the trial judge finds them useful. Thus, we have moved away from concentrating upon the statutory factors, which do appear to us to be somewhat arbitrary, toward the finding of fact prescribed by the statute — whether a sexual offender is likely to commit another sexual offense. Although this is a difficult fact to adjudicate, we have concluded that it is neither arbitrary nor vague. State v. Fortman (March 27, 1998), Montgomery App. Nos. 16565, 16569; State v. Ilac (June 25, 1999), Montgomery No. 17517, unreported. In short, the determination whether a sexual offender is likely to re-offend, while difficult, is not vague; and, with the removal of the statutory factors as factors that the trial court must consider in making its determination, the arbitrariness inherent in those factors no longer causes the statutory process to be arbitrary.
Champion's Second Assignment of Error is overruled.
 III
Champion's Third Assignment of Error is as follows:
 THE TRIAL COURT'S DECISION, CLASSIFYING APPELLANT AS A SEXUAL PREDATOR, IS CONTRARY TO THE WEIGHT OF THE EVIDENCE.
We have reviewed the documents that the trial court relied upon in making its finding. These include Dr. Susan Dyer's forensic report of October, 1999, the House Bill 180 Screening Instrument prepared by Mary Williams in 1999, a probation department report by Mary Williams in 1999, a shock probation report made to the Hon. Carl Kessler in 1988, and the original pre-sentence investigation report of 1987, including a psychological evaluation by Dr. Barbara Bergman. We have also reviewed the transcript of the hearing, which included Champion's unsworn statement.
In order to find a sexual offender to be a sexual predator, the trial court must find, by clear and convincing evidence, that the offender is likely to commit, in the future, one or more sexually-oriented offenses. R.C. 2950.01(E), 2950.09. When reviewing a judgment of the trial court to determine whether it is against the manifest weight of the evidence, we are required to give some deference to the trial judge. Where the issue is the credibility of witnesses, that deference is great; where, however, the issue is which, of several competing inferences, suggested by the evidence in the record, should be preferred, that deference is much less. State v. Lawson (August 22, 1997), Montgomery App. No. 16288, unreported, at 4.
In the case before us, the evidentiary issue with which we are concerned is not one of credibility — none of the evidence was given under oath, subject to cross-examination. Furthermore, it would be difficult to contemplate a situation wherein a person's likelihood of committing a subsequent sexually-oriented offense would be susceptible to direct proof. To the contrary, that likelihood must be proven inferentially, by circumstantial evidence. Accordingly, although we are required to give some deference to the trier of fact, not much deference is necessary.
The trial court did not write an opinion, so we have no insight into its basis for concluding that Champion is likely to commit a sexually-oriented offense in the future. Therefore, we must review the evidence in the record, and determine whether it is reasonable to find, from the evidence, using a clear and convincing standard of proof, that Champion is likely to commit a sexually-oriented offense in the future.
We have reviewed the evidence, and we conclude that the trial court's finding is reasonable.
The psychological evaluation submitted with the initial pre-sentence investigation reflects that Champion began using beer and marijuana when he was fourteen or fifteen years old, and began using cocaine "in the middle of his high school years." It reflects that Champion's cocaine abuse increased, to the extent that he was spending over a thousand dollars per week for cocaine, and was sometimes able to use cocaine for which he was not required to pay, by virtue of being a dealer. This part of the psychological evaluation continues as follows:
 According to Mr. Champion, as his cocaine addiction increased, he began behaving erratically, according to other people. He frequently threatened people verbally and "talked crazy to people." He stated that he often "felt like he could do anything that he wanted." Mr. Champion denied any experience with cocaine hallucinosis or paranoid thinking, but he described a grandiose perception and increasingly aggressive behavior. Mr. Champion reported that "people were jealous of him," because he was making money and "doing something for himself." According to Mr. Champion, he experienced physical withdrawal symptoms for about one month after he was arrested. He was experiencing cramps and sweating and intense cravings for cocaine. He stated that he has never sought or received any form of drug treatment.
By contrast, during Champion's psychological evaluation interview in 1999, for purposes of the sexual offender classification hearing, he denied that he had ever abused any substances, and referred to his crack cocaine usage, at least during 1992, as "only occasional."
Champion, himself, blamed the incident for which he pled guilty to Attempted Rape upon his use of drugs. It appears that he has little or no insight into the extent of his problem with drug dependency, which, at the time of this offense, by Champion's own report, caused him often to feel that he could anything that he wanted.
Champion also appears to have little or no insight into the circumstances of his offense. At the time, in 1987, Champion conceded that his victim had expressed an unwillingness to have sexual intercourse with two men at the same time, so that, even by Champion's account, the sexual intercourse he had with the victim went beyond the scope of her consent. In 1999, however, he reported that the sexual intercourse he had with the victim was entirely consensual, the victim becoming annoyed only when she did not receive drugs, as a quid pro quo, following sexual intercourse with the other man. This suggests that Champion does not recognize the wrongful nature of his behavior in 1987, thus making it more likely that he will follow his impulses in the future into equally wrongful behavior.
Both the psychological reports in 1987 and in 1999 reflect an individual who has difficulty preventing his impulses from leading him into anti-social behavior. Champion's misdemeanor assault on a parole officer in 1994 is consistent with this aspect of this psychological profile. He had been incarcerated for five years, and had been on parole for only a couple of years, when he assaulted a parole officer. Despite the threat of re-incarceration hanging over him, he was unable to refrain from assaulting a parole officer.A determination whether a sexual offender will commit another sexually-oriented offense in the future is inherently difficult. We would not characterize the evidence in the record before us as overwhelming. Nevertheless, we conclude that it is reasonable to find, based on the clear and convincing evidence in the record before us, that Champion is likely to commit another sexually-oriented offense in the future. It is only necessary to find that Champion is likely to commit another sexually-oriented offense at some indefinite time in the future, i.e., during his lifetime. We conclude that it is reasonable, based on the evidence in the record before us, to find that Champion is likely to commit another sexually-oriented offense some time during the remainder of his lifetime. We base this conclusion upon Champion's demonstrated inability to control his impulsive, anti-social behavior, which is exacerbated by his tendency toward cocaine abuse.
Champion's Third Assignment of Error is overruled.
 IV ______________________ FAIN, J.,
GRADY, P.J., and YOUNG, J., concur.